## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 02 2017, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny J. Howe, | November 2, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 60A01-1701-CR-238 |
| v. | Appeal from the Owen Circuit Court |
| State of Indiana, | The Honorable Lori Thatcher Quillen, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 60C01-1509-F1-431 |

**May, Judge.**

[1] Danny J. Howe appeals his thirty-nine-year sentence for Level 1 felony attempted murder[1] and Level 6 felony obstruction of justice.[2]  Howe argues that sentence is inappropriate in light of his character and offense.  We affirm.

## Facts and Procedural History

[2] Howe dated Jenifer Pickett off and on between December 2014 and April 2015.  Thereafter, the two remained friends, corresponding online and occasionally spending time together.  Howe continued to express interest in their friendship developing into a romantic relationship, but Pickett was not interested.  During the summer of 2015, Howe began showing up at Pickett's house at unexpected times.  On September 11, 2015, Pickett informed Howe that she was dating someone else, and Howe texted Pickett that he was going to kill himself because she would not be in a relationship with him.  The next morning, when Pickett let her dog outside, Howe was standing in her back yard and tried to talk to her, but she screamed and her neighbor called the police.  Pickett cancelled a date scheduled for that evening with David Sheese because she was concerned that Howe would follow them.

[3] In the late afternoon on September 17, Sheese and Pickett went on a motorcycle ride, and then Sheese dropped Pickett off at her house between 8:00 and 8:30 in

---

[1] Ind. Code §§ 35-42-1-1(1) (2014) & 35-41-5-1(a) (2014).

[2] Ind. Code § 35-44.1-2-2(a)(3) (2014).

the evening. As Sheese was driving out of Pickett's neighborhood, he noticed headlights pull out behind him and begin to follow him. He believed the headlights were for a Jeep, which was the kind of vehicle Pickett had told Sheese that her ex-boyfriend, Howe, drove. Because Sheese was concerned Howe was following him, Sheese pulled into a restaurant parking lot. Howe pulled the Jeep into a parking lot down the street, turned it around to face Sheese, and turned off his headlights.

[4] When Sheese pulled out of the parking lot, Howe resumed following him. Sheese tried to lose Howe by weaving in and out of traffic, speeding, passing numerous cars, and taking a circuitous route, but Howe caught up with Sheese a couple of miles before Sheese arrived home. Sheese did not want to lead Howe to his house, so he kept driving and turned back toward town. A few miles later, after following Sheese for over twenty-three miles, Howe rammed the back of Sheese's motorcycle with the front of the Jeep, sending Sheese and the motorcycle flying into the ditch on the right side of the road.

[5] Sheese landed on his right side and felt pain in his chest. He saw Howe exit the driver's door, retrieve a shotgun from the back seat of the Jeep, and begin walking toward where Sheese and his motorcycle were lying in the ditch. Sheese decided to play dead as Howe used the barrel of the gun to look through the weeds for Sheese. When the barrel of the gun came close to Sheese, he grabbed the barrel and attempted to pull the gun away from Howe. Howe managed to keep ahold of the gun and backed up three or four steps from Sheese. Sheese jumped up and screamed that he did not want to die.

[6] Without saying anything, Howe raised the shotgun to his hip and pulled the trigger. The shot hit Sheese's right arm and the right side of his body. The shot shattered Sheese's forearm, leaving his arm dangling by the skin. Sheese felt "the worst pain you could ever have," (Tr. Vol. 3 at 83), and believed he "was going to die any minute." (*Id*.) Sheese thought he was too injured to run away, so he fell to the ground to play dead again. Howe walked up close to look at Sheese and then returned to the Jeep and sped away. That night, Howe disposed of the shotgun in a lake and his Jeep was destroyed by a suspicious fire in Howe's garage.[3]

[7] After Howe sped away, Sheese tried to locate his cell phone but could not. He stood to walk to the house down the road, but he did not have the strength to walk and returned to the ground. A passing car stopped, and the passengers called authorities and rendered first aid. Sheese was rushed to the hospital where he had exploratory surgery of his chest and abdomen to ensure he did not have any internal injuries from the gunshot wounds. Sheese has had multiple surgeries on his arm, including placement of a steel rod and bone grafts using bone removed from his hips, and he is expected to need additional surgeries in the future. After the blast "there was no skin left on the inside of [Sheese's] forearm," (*id*. at 92), so doctors had to stretch the skin from the outside of Sheese's forearm to cover the inside of his arm.

---

[3] An officer from the State Fire Marshall's Office testified no criminal charges were filed with respect to the fire because "we couldn't classify it to an acceptable scientific level of certainty." (Tr. Vol. 2 at 98.)

[8]     The State charged Howe with Level 1 felony attempted murder and Level 6 felony obstruction of justice. A jury found Howe guilty of both. After another hearing, the court sentenced Howe to concurrent sentences of thirty-nine years for attempted murder and two and a half years for obstruction of justice. The court entered a written order that included the following statement:

> The Court finds that there are significant aggravating circumstances that exist in this case. The defendant has expressed no responsibility for his actions. The defendant at trial attempted to place the blame for his actions on an ex-girlfriend breaking his heart and playing with his emotions. The defendant at sentencing still will not accept full responsibility for the totality of his actions and the emotional, physical and financial toll it has had upon the victim. The Court finds that defendant by failing to accept responsibility and by refusing to be held accountable mentally for his actions cannot substantiate to this Court that this type of criminal behavior may not happen in the future. The Court re-enforces this position by looking at the defendant's prior criminal history. The past criminal history is significant in that it is similar to the stalking conduct that resulted in this crime occurring. The defendant has prior crimes of invasion of privacy. It is also relevant that the defendant pursued the victim for over 20 miles and had numerous opportunities to change his mind and not commit these crimes. The conduct was planned and calculated both before and after the contact with the victim. The victim has suffered significant mental and medical health issues that are directly related to the actions of the defendant. The injuries suffered were extensive and will require further surgeries and will result in future trauma and pain for the victim. The injuries suffered are in excess of those normally associated with an attempted murder conviction. The [victim] played dead and as a result the defendant fled the scene leaving the victim laying on the side of the road. It is only because a paramedic and a good Samaritan drove by and saw him and administered

emergency aid that the victim is alive today. Certainly had the victim died the defendant would be serving no less than a minimum of 45 [y]ears at the Department of Corrections [sic] and potentially much more. This Court finds that to sentence the defendant to anything less than 39 years would undermine the seriousness of this offense and the manner in which it was committed. The Court finds that there are no mitigating circumstances. The Court finds that the aggravating circumstances significantly outweigh the mitigating circumstances.

(Appellant's App. Vol. 2 at 167-68.)

# Discussion and Decision

[9]    We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)). We consider the aggravators and mitigators found by the trial court and also any other factors appearing in the record. *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016), *trans. denied*. The appellant must demonstrate his sentence is inappropriate. *Id*. at 418.

[10]   When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The sentencing range for a Level 1 felony is "a fixed term of between twenty (20) and forty (40) years, with the advisory sentence being thirty (30) years." Ind. Code § 35-50-2-4 (2014). The sentencing range for a Level 6 felony is "a fixed

term of between six (6) months and two and one-half (2 ½) years, with the advisory sentence being one (1) year." Ind. Code § 35-50-2-7(b) (2014).

[11] Howe asserts the nature of his offense was "unremarkable," (Br. of Appellant at 7), and "not atypical of other attempted murders." (*Id*.) We disagree. Howe had never met Sheese, and Howe's only reason for having contact with Sheese was that Sheese had started dating the woman who had stopped dating Howe approximately five months earlier. Howe followed Sheese more than twenty miles, drove his Jeep into Sheese and his motorcycle, and then, without saying a word, shot Sheese from three paces with a shotgun and left him for dead. To try to hide his guilt, Howe threw the shotgun in a lake, and lied to police about its location. Thirty-nine years is not inappropriate for those crimes.

[12] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*.

[13] In 1991, Howe paid a fine for carrying a concealed weapon without a permit, and in 2005, Howe committed invasion of privacy in two separate counties, and one of the offenses involved violation of a protective order. For those crimes, Howe served time in jail and on probation. As the trial court noted at sentencing, Howe's criminal history is significant because of its similarity to the

behavior Howe was exhibiting toward Pickett, which lead to Howe shooting Sheese.

[14] Also relevant to Howe's character is his denial of responsibility for the injuries he inflicted on Sheese. At trial, Howe asserted he was following Sheese because Sheese shook his fist at Howe and his Jeep hit Sheese because Sheese "just stopped suddenly." (Tr. Vol. 3 at 135.) Howe also claimed he approached Sheese in the ditch without his gun and, when he got close, Sheese "popped his eyes open real big and growled and showed his teeth," (*id*. at 138), which is why Howe ran back to the Jeep for his gun, "pointed it at the ground and fired one shot at – at the ground." (*Id*. at 141.) Howe asserted he did not know Sheese was injured when he sped away from the scene, but yet Howe did not bother to report the accident to police and he disposed of the gun in a lake. Howe's behavior after leaving the scene of what he alleges was just an accident undermines his version of events and his character.

[15] In light of all those facts, we cannot say Howe's thirty-nine-year sentence is inappropriate in light of his character and his offenses. Accordingly, we affirm.

[16] Affirmed.

Barnes, J., and Bradford, J., concur.